Colin Hunter, OSB No. 131161
chunter@bradleybernstein.com
Bradley Bernstein Sands LLP
1211 NW Glisan St., Suite 204
Portland, Oregon 97209
Telephone: 971-337-0190

Christopher Heywood, OSB No. 163984
chris@hoffmanlawpnw.com
Hoffman Law LLC
1000 S.W. Broadway, Suite 1500
Portland, Oregon 97205
Telephone: 503-222-1125

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

SEAN LUNDRY, an individual.

Plaintiff,

v.

CITY OF SANDY, a municipal corporation; STAN PULLIAM, an individual, in his personal capacity; TYLER DEEMS, an individual, in his personal capacity; and JEFF APRATI, an individual, in his personal capacity,

Defendants.

CASE NO. 3:24-cv-01433-AB

**PLAINTIFF'S TRIAL MEMORANDUM**

## I. INTRODUCTION

This case results from the City of Sandy's termination of a dedicated 20-year law enforcement officer, Sean Lundry. Mr. Lundry served with distinction at the Sandy

Police Department ("SPD") and, until the events that gave rise to this case, consistently received positive evaluations and promotions throughout his tenure.

In late 2023, Mr. Lundry was selected to serve as the interim chief of SPD, and he stood a strong chance of being selected as the permanent chief. In early 2024, however, Mr. Lundry's fortunes changed dramatically. Specifically, after the City chose another candidate for the position of chief—an out-of-state candidate with a checkered employment record—Mr. Lundry and his supporters pursued public records and questioned City leadership's decisionmaking. In response, the City—led by the individual Defendants, Tyler Deems (the City Manager), Jeff Aprati (the Deputy City Manager), and Stan Pulliam (the then-Mayor)—abruptly placed him on leave, referred him for a frivolous criminal investigation, and terminated him on the basis of groundless allegations.

As a result of the Defendants' conduct, Mr. Lundry was not only terminated from his employment with SPD; in addition, he is effectively precluded from ever serving in law enforcement again. These events have caused tremendous economic, reputational and emotional harm to Mr. Lundry.

Mr. Lundry looks forward to presenting evidence and receiving the jury's verdict in this case, which is scheduled for trial beginning November 16, 2026, in Portland.

## II. DISCUSSION

### A. Factual Background

#### 1. Mr. Lundry's Employment Record

After more than a decade of service with The Dalles Police Department, Mr. Lundry joined SPD in 2015. He served there with distinction and, over the years, was promoted from Sergeant to Lieutenant. In that role, he often served as acting chief in the police chief's absence.



BRADLEY BERNSTEIN SANDS LLP
1211 NW Glisan St., Suite 204
Portland, OR 97209

In late 2023, Mr. Lundry was selected to serve as interim Chief of Police following the retirement of his mentor, longtime Chief Ernie Roberts. Mr. Lundry enjoyed significant support from the community and SPD itself, and Mr. Roberts had long supported Mr. Lundry's desire to succeed him as Chief. (In fact, Mr. Lundry had been offered the position of Chief in Cottage Grove in the summer of 2023, but declined because he wanted to remain in Sandy, where he hoped to serve the community as Mr. Roberts' successor.)

**2. Tensions Develop as Mr. Lundry Applies to Become Chief**

Although Mr. Lundry had a professional working relationship with Mr. Deems, friction soon developed. While serving as Interim Chief, Mr. Lundry—who is certainly a rule follower, perhaps to his own detriment—discovered that Mr. Deems had improperly used approximately $30,000 from SPD's limited general budget to pay for consultants used in the police chief recruitment process. Mr. Lundry raised concerns about this misuse of funds with City accounting staff and directly with Mr. Deems, and further escalated the issue to City Council President Laurie Smallwood. Mr. Deems refused to return the funds.

While serving as Interim Chief, Mr. Lundry participated in the recruitment process for permanent police chief of SPD. Selected as one of three finalists for the position, Mr. Lundry attended two receptions on January 3, 2024, held by the City at which attendees submitted comment cards with their views on the three police chief finalists. Though the vast majority of commenters supported Mr. Lundry for the position based on his service to the community, the City passed over Mr. Lundry and selected an external candidate from Utah, Gary Jensen, for the permanent police chief position.[1]

---

[1] To be clear, this case is *not* about the City's decision to pass over Mr. Lundry for the permanent role of police chief. Defendants' arguments to that effect are a red herring. Instead, this case is about the Defendants' unlawful employment conduct,

*(Cont'd on next page)*



**BRADLEY BERNSTEIN SANDS LLP**
1211 NW Glisan St., Suite 204
Portland, OR 97209

In one anonymous comment card, someone alleged that Mr. Lundry had improperly shredded documents when he became interim chief. City leadership received and reviewed this comment card on or about January 3, but no one thought anything of this anonymous comment: no one raised it with Mr. Lundry or suggested investigating him, much less making a criminal referral.

**3. The Community Responds, and Defendants Close Ranks**

The City faced significant community backlash from its decision to hire Mr. Jensen. Mr. Lundry, his wife, and other community members criticized the decision in direct communications to City leadership and in person at City Council meetings. As they pointed out to the City's embarrassment, even a cursory internet search showed that Mr. Jensen had been involved in at least two unseemly public controversies relating to his law enforcement service, including a widely reported incident in which Mr. Jensen offered special treatment to Utah State University football players. With Mr. Lundry's urging and assistance, his wife and community supporters also submitted public records requests seeking the release of information related to the City's decisionmaking and lack of transparency in the police chief selection process.

In early February 2024, while this controversy swirled, Mr. Deems—the City Manager—and Mr. Lundry had a regular one-on-one check-in meeting. At that meeting, Mr. Deems wanted to ensure that Mr. Lundry was willing to continue serving as interim chief despite Mr. Jensen's selection, which Mr. Lundry confirmed. In addition, Mr. Deems asked offhandedly about a rumor that Mr. Lundry had said he would fly to Utah

---

which resulted in Mr. Lundry's unjustified administrative leave, his termination and his resulting inability to work in law enforcement. But for the Defendants' conduct, Mr. Lundry would have continued his employment as Lieutenant at SPD in the short term and then moved to a new department for the longer term.



**BRADLEY BERNSTEIN SANDS LLP**
1211 NW Glisan St., Suite 204
Portland, OR 97209

to punch Mr. Jensen. Mr. Lundry denied this false rumor, which Mr. Deems himself indicated he did not believe.[2]

In response to the public records requests that Mr. Lundry had organized, the City dug in its heels, refusing to release the comment cards. Mr. Lundry and his allies challenged that decision. On February 14, the City's position was quickly rejected by the Clackamas County District Attorney's Office, which ordered the release of the cards. Upon learning of the DA's decision, senior City officials, including the individual Defendants here, responded angrily to the release of the cards and quickly closed ranks.

**4. Defendants Retaliate Against Mr. Lundry**

The Defendants quickly began developing a plan to silence Mr. Lundry and push him out of SPD. Specifically, in an executive session in advance of a February 20 City Council meeting, Mr. Pulliam, Mr. Deems and the City Council developed a plan pursuant to which they would put Mr. Lundry on leave to investigate the baseless, stale and anonymous allegation that Mr. Lundry had improperly shredded documents—an allegation that they had been aware of since January 3. Mr. Pulliam then worked this plan, informing Mr. Aprati on February 23 that he had apprised "many councilors" of the plan and its next step—a clear reference to the plan regarding Mr. Lundry.

Indeed, on February 23, Mr. Lundry was informed by Mr. Deems that he was not only being placed on administrative leave but also being referred for criminal investigation. (Mr. Lundry also recorded the February 23 meeting, this time with Mr.

---

[2] Mr. Lundry recorded this meeting without Mr. Deems' consent. While Defendants make much of this decision, it is and should be a non-issue. Mr. Deems had no objection when Mr. Lundry asked to record a second meeting later that same month. And asked during his deposition why he takes issue with Mr. Lundry's recording of the early February meeting, Mr. Deems could only say that he found it "strange"—hardly grounds for termination of a respected, high-performing law enforcement officer like Mr. Lundry.



BRADLEY BERNSTEIN SANDS LLP
1211 NW Glisan St., Suite 204
Portland, OR 97209

Deems' consent.) The same day, the City publicly announced on its website that it was removing Mr. Lundry from the role of Interim Chief.

Mr. Deems then personally referred Mr. Lundry to the Oregon State Police (OSP) for criminal investigation, and he repeatedly followed up to ensure that OSP was pursuing the investigation. Upon receiving OSP's investigation, the Clackamas County District Attorney's office quickly determined that there was no basis for prosecuting Mr. Lundry. Just as they had done with the adverse public records decision, City leaders reacted with dismay upon learning that the DA's office would not prosecute Mr. Lundry, and—rather than drop the matter—they doubled down.

Specifically, notwithstanding the DA's determination that there was no evidence of improper handling of public records, the City chose not only to continue its internal investigation but also to levy new allegations that Mr. Lundry had engaged in "harassing and/or bullying behavior with subordinate employees" and alleged "threats of violence in the workplace."

**5. Defendants Publicly and Privately Smear Mr. Lundry**

While this investigation was ongoing, the City engaged in a concerted campaign to publicly defend itself and impugn Mr. Lundry. The City's strategy included monitoring Sandy-related Facebook pages and groups and—using the City's official Facebook page— actively inserting itself into conversations to malign Mr. Lundry and question his supporters' motives. Mr. Deems directed that strategy and Mr. Aprati executed it, even though—in private text messages—they questioned whether it was ethical to comment publicly on personnel matters in that fashion.

Mr. Lundry, still on administrative leave, was active on social media. In response to another Sandy resident's question, Mr. Lundry stated in a public Facebook comment that he would no longer be interested in serving as Sandy's police chief "with the current mayor, council, and appointed leadership." Mr. Deems and Mr. Aprati quickly

saw Mr. Lundry's comment and shared screenshots of it. Indeed, the jury will see a record of internal communications and social media comments in which City leaders conducted themselves unprofessionally and vindictively. These include private text messages in which they ridiculed Mr. Lundry's supporters, say that positive media coverage of Mr. Lundry "makes them sick," and generally conducted themselves in a manner that makes it clear they had no intention of treating Mr. Lundry fairly.

Following an internal investigation, Mr. Deems and the City formally announced what was already a foregone conclusion, notifying Mr. Lundry on May 22 that they intended to terminate Mr. Lundry's employment—not for the conduct that was actually the subject of the investigation, but instead based on other allegations of which Mr. Lundry had never received notice. In addition, the City's May 22 letter expressly acknowledged that it was terminating Mr. Lundry based on his Facebook post criticizing City leadership. (Similarly, Mr. Pulliam expressly cited Mr. Lundry's role in organizing public records requests—again, core First Amendment activity—as one of the grounds for the City's decision to investigate and discipline Mr. Lundry.)

**6. Mr. Lundry's Damages**

As a direct result of Defendants' public smear campaign, and their baseless decision to terminate him, Mr. Lundry not only lost his employment at SPD, but—by virtue of Defendants' "investigations," which they reported to Oregon's Department of Public Safety Standards and Training (DPSST)—has lost the ability to work *anywhere* in law enforcement.[3] As a result, Mr. Lundry has effectively had to start over, losing the

---

[3] Because the DPSST investigation remains pending, and because it arises in part from Mr. Deems' false allegations of dishonesty, Mr. Lundry is unhirable in law enforcement as a practical matter. Mr. Lundry applied for numerous law enforcement positions after being terminated by the City but received no offers of employment.



**BRADLEY BERNSTEIN SANDS LLP**
1211 NW Glisan St., Suite 204
Portland, OR 97209

benefit of his 20 years in law enforcement and the preferred position in the state's retirement system that came with it.

To his credit, after being terminated from SPD, Mr. Lundry promptly obtained new employment and has now found a solid-paying job. However, both in terms of salary and benefits, this new position (and any other Mr. Lundry is likely to find) pays much less than he was making at Sandy, and much less than he would have made even if he had left Sandy for another law enforcement position.

In particular, as a result of Defendants' conduct, Mr. Lundry has suffered lost earnings—including wages, benefits, retirement income—in excess of $1.5 million (in present value). He also has suffered the loss of reputation and emotional distress that logically accompany Defendants' campaign to force him out of his chosen career in law enforcement. Given the nature of the individual Defendants' conduct, Mr. Lundry will also ask that the Court instruct the jury on punitive damages on each of his claims.

## B. Claims at Issue

Mr. Lundry brought five claims in this case, all of which are at issue in trial. Three of those five (his First, Second, and Third) are federal claims under Section 1983. The remaining two claims (his Fourth and Fifth) are a state-law wrongful discharge and whistleblowing claim, respectively.

Mr. Lundry's **First Claim** is for violation of his Fourteenth Amendment right to a name-clearing hearing. In addition to the general elements applicable to Section 1983 claims,[4] and in addition to proving damages, his First Claim requires him to prove that: (1) Defendants publicly disclosed stigmatizing information about Mr. Lundry; (2) the stigmatizing statement was made in the course of the termination of employment; (3)the stigmatizing statement was substantially false; (4) the plaintiff contested the accuracy of

[4] See proposed jury instructions 18-21.



BRADLEY BERNSTEIN SANDS LLP
1211 NW Glisan St., Suite 204
Portland, OR 97209

the stigmatizing statement; and (5) the defendant denied plaintiff a meaningful opportunity to rebut the charges made against him and clear his name through a name-clearing hearing.

Mr. Lundry's **Second Claim** is for violation of his Fourteenth Amendment right to due process. His Second Claim requires him to prove that: (1) Mr. Lundry had a property interest in his continued employment; and that either (2) he was not given notice, oral or written, of the charges or reasons for the proposed termination; or (3) he was not given an explanation of the employer's evidence; or (4) he was not given a meaningful opportunity to respond and present his side of the story.

Mr. Lundry's **Third Claim** is for First Amendment retaliation. It requires him to prove that: (1) he spoke as a private citizen and not as part of his official duties as a public employee; (2) he spoke on a matter of public concern; (3) that the defendant took an adverse employment action against him; and (4) Mr. Lundry's speech was a substantial or motivating factor for the adverse employment action.

Mr. Lundry's **Fourth Claim** is for common law wrongful discharge against only Mr. Deems and the City. It requires him to prove that (1) the defendant discharged Mr. Lundry from employment; and (2) a substantial factor in the decision to discharge the plaintiff was that Mr. Lundry organized public records requests directed at the City; and (3) he sustained damages as a result of the discharge.

Mr. Lundry's **Fifth Claim** is for whistleblowing under ORS 659A.203 against only Mr. Deems and the City. It requires him to prove that Mr. Lundry disclosed information that he reasonably believed was evidence that a public employer engaged in mismanagement, gross waste of funds, or abuse of authority; or (2) that he disclosed the activities of the City of Sandy to a member of the City Council; and (3) Mr. Deems or the City took or threatened to take disciplinary action against the plaintiff because of the disclosure, and (4) that he was damaged as a result.



**BRADLEY BERNSTEIN SANDS LLP**
1211 NW Glisan St., Suite 204
Portland, OR 97209

### C. Affirmative Defenses

Defendants' only affirmative defense (after acquired evidence) alleges that Mr. Lundry's recording of the February 2024 meeting with Mr. Deems would have resulted in Mr. Lundry's termination had they known of it at the time. Under Ninth Circuit precedent, in order to bring this claim to a jury, Defendants must adduce some evidence showing that their *actual employment practices* would have resulted in mandatory termination of Mr. Lundry on the basis of this single incident alone. For both legal and factual reasons, Plaintiff believes that the evidence will be insufficient to bring that issue to the jury.

## III. CONCLUSION

Plaintiff looks forward to trial in this matter and, at the conclusion of evidence, will ask that the jury return a verdict in his favor on each of his claims.

DATED: October 13, 2026

*s/Colin Hunter*
Colin Hunter, OSB No. 131161
chunter@bradleybernstein.com
Bradley Bernstein Sands LLP
1211 NW Glisan St., Suite 204
Portland, OR 97209
Telephone: 971.337.0190

Christopher Heywood, OSB No. 163984
chris@hoffmanlawpnw.com
Hoffman Law LLC
1000 S.W. Broadway, Suite 1500
Portland, Oregon 97205
Telephone: 503.222.1125

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing **PLAINTIFF'S TRIAL MEMORANDUM** on the following named person(s) via CM/ECF as indicated below:

Kim E. Hoyt
khoyt@ghrlawyers.com
Travis A. Merritt
tmerritt@ghrlawyers.com
Garrett Hemann Robertson P.C.
P.O. Box 749
Salem, Oregon 97308-0749
Tel: (503) 581-1501
Fax: (503) 581-5891

DATED: October 13, 2026

*/s/Colin Hunter*
Colin Hunter, OSB No. 131161
chunter@bradleybernstein.com
Bradley Bernstein Sands LLP
1211 NW Glisan St., Suite 204
Portland, OR 97209
Telephone: 971.337.0190

*Attorneys for Plaintiff*